## DETERMINED IN THE

# FIRST DEPARTMENT

## AT

# GENERAL TERM,

## January, 1895.

---

CLINTON BANK, Appellant, *v.* AUGUST M. COLLIGNON, Respondent.

*Action on a promissory note — allegations of fraud and an order of arrest procured — the fraud must be proven by the plaintiff — gift by a husband to his wife — when void as to creditors.*

If, in an action brought to recover the amount of a promissory note, the plaintiff, in pursuance of the provisions of subdivision 4 of section 549 of the Code of Civil Procedure, alleges a fraudulent disposition by the defendant of his property, and procures an order of arrest upon that ground, he must, in order to succeed upon the trial of such action, prove such fraud.

Where money has been given by a husband to his wife, with the expectation that it would be returned and without the expectation that she would retain possession of the same, such gift confers no title on the donee which will stand against the claims of the creditors of the donor.

APPEAL by the plaintiff, the Clinton Bank, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 2d day of March, 1894, upon the verdict of a jury rendered after a trial at the New York Circuit, and also from an order entered in said clerk's office on the 2d day of March, 1894, denying the plaintiff's motion for a new trial made upon the minutes.

*Clarence Lexow*, for the appellant.

*R. W. Todd*, for the respondent.

VAN BRUNT, P. J.:

The respondent states this action to have been brought to recover the sum of $6,000 and interest from June 6, 1892, as damages

alleged to have been sustained by plaintiff on account of an alleged disposition by defendant of his property with intent to cheat and defraud his creditors and particularly the plaintiff, after he had incurred the indebtedness herein to the plaintiff. We do not understand this to have been the nature of the action, but rather that the action was to recover upon a promissory note made by the defendant on the 1st day of February, 1892, for $6,000, payable four months after date; and, pursuant to the provisions of subdivision 4 of section 549 of the Code of Civil Procedure, the plaintiff alleged a fraudulent disposition of the property to support an order of arrest upon that ground; and, pursuant to such provisions, it was necessary in order that the plaintiff should succeed upon the trial of the action that he should prove such fraud.

It is claimed upon the part of the appellant that the learned court upon the trial of this action erred in refusing divers requests to charge made by the appellant's counsel. Upon an examination of these requests it appears that they all except one were couched in language which contained expressions laying down a more stringent rule than was consonant with the law, as we understand it, applicable to the case. It is not necessary that we should consider these requests in detail, because they all presented the same general features in this respect and called for a class of proof which does not obtain ordinarily in civil cases. In respect to the request which is not subject to this criticism it does not seem to be applicable to the facts as established upon the trial.

This leaves the question as to whether the verdict of the jury was against the evidence, and whether the court below, upon the motion of the plaintiff, should have set it aside upon that ground. Upon an examination of the case we are of opinion that the court erred in this respect. Much of the story as told by the defendant and his witnesses is in the highest degree improbable, and some of its features show beyond question a fraudulent disposition of property by the defendant, in which the preponderance of evidence would seem to indicate the defendant's wife, who is alleged to have received the property fraudulently misapplied, participated. It appears from the evidence that the defendant had been in business for a number of years prior to the time of his failure in April, 1892. Before such failure he conveyed a considerable amount of property to his wife

for the purpose of paying an alleged indebtedness to her of $14,600, and it is the consideration for this transfer which is attacked. The defendant claimed that this consideration was made up of a note bearing date June 1, 1870, for $1,000, and of another note bearing date January 1, 1892, for $13,600. It is the consideration for this latter note which is more particularly called in question. It appears that for twenty years prior to the time of his failure the defendant had been keeping house; that he had paid the rent of the house, and had made certain allowances to his wife for running the house. It appears from the testimony of the wife that at various periods during this time she kept boarders or let out furnished rooms, and she claims that a large part of the money which formed the consideration of this note on January 1, 1892, for $13,600, was what she had accumulated in the business of keeping boarders in the way stated, and which she turned over to her husband, he giving her from time to time notes therefor. The wife was unable to recollect whether it was $3,000 or $4,000 of boarders' money and interest, or evidently exactly what amount, came from this source. The balance of the note was made up of money which had been given for Christmas and birthday presents made by the defendant to his wife during this long course of years, ranging from twenty-five dollars to $1,000 The defendant claims to have been in the habit of giving his wife money as presents at Christmas and upon her birthday, and that she was in the habit of returning these moneys to him, he giving her notes therefor. But notwithstanding the observance upon the part of the defendant of the anniversary of his wife's birth by these large and munificent presents, he was unable to give its date. It further appears that no entries whatever were made in the defendant's books according to his own testimony in reference to these notes, and the only account that he had were the notes held by his wife. Then on the 1st of January, 1892, when he desired to lump the thing, his wife holding two or three notes for different amounts given at different dates, interest was calculated, and this one note was given at $13,600. But there is no explanation, if the thing was to be lumped, why they did not lump the $1,000 note of June, 1870, which probably may have had some foundation outside of the imagination of the parties to the transaction. It was sought to reinforce the evidence of the defendant and his wife in

regard to the consideration for the $13,600 note by the testimony of their daughter, who it is stated at the time of the giving of the note of January 1, 1892, calculated the interest, etc. She swears that she was present, and that her mother had some notes, but she knew nothing as to the consideration of the note, and her testimony is of little weight in considering the main question as to whether this was not a scheme gotten up by this defendant for the purpose of laying aside something for a rainy day at the expense of his creditors. That the defendant is utterly unworthy of belief is clearly established. He says in accounting for the diminution of his assets, that he lost some $20,000 speculating in stocks in the office of Henry Clews & Co. He then states that he lost $20,000 more in a broker's office down town, whose name he does not know, and of the location of which he is ignorant; and that although he kept a bank account and was perfectly familiar with the methods of business, he carried his money down there in bills, at one time having $12,000 in his pocket, and that he was recommended to this place by somebody he did not know, but he thought it was all straight. How this defendant could possibly expect anybody but children of very credulous years to believe such a story it is impossible to imagine. It is so false upon its face that it does not need comment to point its incredibility. We further find that the defendant seems to have made representations in regard to his property which were inconsistent with the truth if this indebtedness to his wife existed. And it seems to us that the whole story is of such a fictitious character that it can have but little weight in a court of justice. If these moneys were ever given by the defendant to his wife, it is manifest from the evidence that it was with the expectation that they should be returned — loaned by her as he calls it — and that there was no expectation that she should retain possession of the same. Such an alleged gift could confer no title in the defendant which could stand against the claims of his creditors. It seems to be unnecessary to discuss the evidence in detail, as the general features which have been above mentioned are sufficient to characterize the whole attitude of the defendant and to show that, in order that he might secrete some of his property from his creditors, it was necessary that he should invent losses which he had never sustained. With this feature in the case it was evident that the defendant's

intentions were fraudulent, and that was all that was necessary to maintain the action.

The order denying the motion for a new trial should be reversed and the verdict set aside and the judgment vacated, with costs of appeal, and a new trial granted upon the plaintiff's paying the costs of the trial in the court below.

FOLLETT and PARKER, JJ., concurred.

Order denying motion for new trial reversed and verdict set aside and judgment vacated, with costs of appeal, and new trial granted upon plaintiff's paying costs of trial in the court below.